```
Presented by:
DEVIN A. MARTIN
Pro se Plaintiff,
DOC NO. 384305
C.B.C.C.
1830 Eagle Crest Way,
Clallam Bay, WA. 98326-9723.
(360)-963-2000.
Counselor Mr. Leverington.
```

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

*Devin A. Martin,*
(Name of Plaintiff), *pro se,*

vs.

*Washington State Department of Corrections, Secretary Steven Sinclair et al., all Sued in their individual and Official Capacities,* (Names of Defendant(s)).
*(See page 3 for full list of Defendants).*

NO. C17-5591BHS/JRC

CIVIL RIGHTS COMPLAINT BY A PRISONER UNDER 42 U.S.C. § 1983

Jury Trial Demanded.
Federal Question.

(Clerk's action required).

## I. Previous Lawsuits:

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner?:

☐ Yes   ☑ No

B. If your answer to A is yes, how many?: __N/A__ . Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff: __N/A__

Defendants: __N/A__

CIVIL RIGHTS COMPLAINT -- **1.**

2. Court (give name of District): __N/A__

3. Docket Number: __N/A__

4. Name of judge to whom case was assigned: __N/A__

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?): __N/A__

6. Approximate date of filing lawsuit: __N/A__

7. Approximate date of disposition: __N/A__

## II. Place of Present Confinement: _Clallam Bay Corrections Center._

A. Is there a prisoner grievance procedure available at this institution? ☒ Yes   ☐ No

B. Have you filed any grievances concerning the *facts* relating to this complaint? ☒ Yes   ☐ No

__N/A__ If your answer is NO, explain why not: ____

C. Is the grievance process completed? _See, log i.d. #17830175._   ☒ Yes   ☐ No

**If your answer is YES, ATTACH A COPY OF THE <u>FINAL</u> GRIEVANCE RESOLUTION for any grievance concerning facts relating to this case.**

## III. Parties to this Complaint

A. Name of Plaintiff: _Devin A. Martin_     Inmate No.: _384305_

Address: _C.B.C.C., 1830 Eagle Crest Way, Clallam Bay, WA. 98326._

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

B. Defendant: _#1. Steven Sinclair_   Official Position _Secretary_

Place of employment: _WA. State Dept. of Corrections._

CIVIL RIGHTS COMPLAINT --       2.

C. Additional defendants #2: CBCC Superintendent Ronald Haynes,
#3: IMU Unit Manager Kenneth McKenney, #4:
Counselor Amber Y. Bates #5: Edie Proha ARNP,
#6: Loretta Onstead R.H.I.T., #7: Grievance Coordinator-
Michael Holthe, all Sued individually, and officially.

## IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. Do not give any legal arguments or cite any cases or statutes. If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

I was twelve years old when I realized that I have a medical issue that has now been diagnosed as Severe Sleep Apnea. Ever since I can remember I always had a difficult time breathing, and did not know it was a serious issue until my mother brought it to my attention. It started when my mother would wake me up during my sleep to make sure I was breathing. This had happened very periodically until I asked my mother "why she would wake me up like this"? She responded "I noticed that your loud snoring would abruptly stop, and when I decided to check on you I discovered that you would stop breathing". I had left the issue alone until I turned fourteen and was placed into Echo Glen Childrens Center. While in Echo Glen Childrens Center it had become a constant issue of being awoken during the night due to my Shortness of breath and complete loss of breath while sleeping. When this problem started to affect my performance with my education and in my ability to perform well in my treatment I decided to consult with the Echo Glen Childrens Center medical Provider about treatment options. They had came to the decision that I should take a sleep study. It was sometime in early 2012 that I went to Childrens Hospital in Seattle, WA to do a sleep study.

See additional Pages attached

3.

## Statement of Claim Cont.

4.07   After the sleep study that was performed at Childrens Hospital I was informed by the specialist that I had not quite had sleep apnea but I should try surgery for a deviated septum, before they recommend the use of a C-PaP breathing machine. It was at this time that we set forth a date for the deviated septum surgery, which would occur upon my release from Echo Glen Childrens Center in the summer of 2013.

4.08   A Couple months after my release from Echo Glen Childrens Center my mother had accompanied me to Childrens Hospital for the surgery. The doctors explained that this operation was taking Place due to excessive cartlidge in my nasal passage and that this was the first of other options.

4.09   At fifteen years old I had this surgery that proved unsuccessful. After the operation I aknowledged that I had the same breathing problems of stopping breathing while asleep.

4.10   It wasnt just not being able to breathe through my nose, it was that I kept being awoken by the complete loss of breath.

4.11 August of 2014 I had been in Cancerated and Placed into green Hill School. It was while housed in Green Hill School that this sleep apnea affected my sleep Patterns so much that my Performance in school and treatment had been noticably impacted due to this.

4.12 It was around November or December that I had consulted with a medical Provider about the issue of my breathing while sleeping and waking up due to this. At that time it was recommended that once again I take another sleep study.

4.13 On or about January of 2015 I went to do a sleep study at _____ in Centraia WA.

4.14 During this sleep study they had Placed me on a variety of monitors during the first half of the night. During the second half of the night, the nurse who was administering test had woke me up and Placed a C-PaP breathing machine around my face and let me go back to sleep to finish the test.

4.15 After the sleep study the nurse had Shared the results with me and had explained that I stopped breathing in my sleep an average of 65 times every hour and that number had dropped Considerably when administered the C-PaP breathing machine.

4.16 It was before I left the sleep
study I was given a C-Pap machine and
instructions on how to use it.

4.17 I went back to Green Hill School
and was then placed into a single man cell due
to that being the only cell with power.

4.18 After the first night. I noticed an
improvement on my sleep, my level of energy, and
my performance in my daily activities.

4.19 On March 30th 2015 I was released
from Green Hill School along with my C-Pap
breathing machine. While at home it was
noticed by both of my parents and myself
when I did not utilize my breathing machine.

4.20 Some time in late may 2015 I
was placed into Kent Regional Justice center. I
was seventeen at this time. My mother and I
had it cleared through the Jail staff and medical
for my mother to bring my C-Pap breathing
machine to me while housed at Kent Regional
Justice center.

4.20 I had my CPAP breathing machine until
my transfer to the department of Corrections,
followed by my transfer to Green Hill School

4.21 When being transfered to the department
of Corrections I released my property to my mother with
the intention for her to bring my C-Pap breathing
machine to me when I was to be placed in Green
Hill School.

4.22  While housed at Green Hill School, I made the Proper inquiries about my mother bringing my C-PaP breathing machine to me. This was the start of a very long journey for me to use my C-PaP breathing machine.

4.23  I had been involved in the African. American group at Green Hill School and we were Preparing for a Performance on February 17 2016. It was on this day that my mother was to bring my C-PaP breathing machine.

4.24  In the begining weeks of February I got it approved by the head of security at Green Hill school, and the MaPle living unit's Program manager Jhonny Lewis, and the living unit's supervisors Henry Davis and Roger ____.

4.25  On February 17 2016 at 12:00 Pm my mother had shown up with my C-PaP breathing machine, at which time I gave to MaPle living unit SuPervisor Roger ____ So he can bring back to the living unit while we finished with our duties.

4.26  The days following February 17 2016 I have made several attempts to get a cell assignment that would suit my medical needs, and my efforts were thwarted by the Program SuPervisors.

4.27  I was told by Maple living unit Supervisor Roger _____ that I "Cannot be Placed in one of the two cells that had Power outlets due to the fact that they were level four rooms and I was a level three." This was strictly enforced even with the Knowledge of it being a serious needs issue I was still being denied due to my level.

4.28  This was an ongoing battle that continued out until March 13 2016 in which an incident occured resulting in my Placement in the Green Hill School I.m.u.

4.29  While housed in the I.m.u I made numerous attempts to have the Green Hill School Willow living unit Staff retrieve my C-PaP breathing machine and was thwarted every time.

4.30  On March 28, 2016 security officer Brian Lowe and another security officer had come to my cell and Placed me in wrist restraints and began to escort me towards the intake building. On the way I turned to security officer Brian lowe and asked "Can Someone can retrieve my Prayer rug and Koran, and my address book from my cell in the I.mu, along with my C-PaP breathing machine from maple living unit"?

4.31 The Green Hill staff had retrieved the above named items and brought them to the intake. The Department of Corrections officers had stated "you cannot bring anything with you during this transfer". When I tried to explain about my C-PaP machine The Department of Corrections officer had stated "I told you, you cannot bring any thing with you, now hurry up and change out."

4.32 Before leaving Green Hill School I signed medical papers but no type of papers involving the due process of my property. I had to leave my property at Green Hill School.

4.33 On March 28, 2016 I was placed into Washington State Corrections center (hereinafter WCC) in Imu Cell E-103, It was on this day when I first addressed my medical needs issue to the Department of Corrections medical persons

4.34 On April 17 2016 I was released from the Imu into general population.

4.35 On April 21 2016 I met with medical staff and they had sent a request for Protected Health information to Green Hill School requesting "Medical records to include sleep study for C-PaP".

4.36 I was in general Population for no longer than two weeks before I was sent to Lewis County Superior Court. I was housed at Lewis county Superior Court until my court was complete before I returned to Washington Corrections Center (hereinafter WCC).

4.37 Some time after returning to Washington Corrections Center on the exact date of June 6th 2016 I signed an Authorization for disclosure of health information to have Green Hill School send my medical records to start the process for me to aquire my C-Pap breathing machine.

4.38 There was no response from Green Hill School for the entire duration of my stay at Washington Corrections Center (hereinafter WCC).

4.39 I was transfered to Airway Heights Corrections Center (hereinafter AHC) on

4.40 While housed at Airway Heights Corrections Center, I made an attempt to mention the progress of my C-Pap breathing machine and was told "There is no progress, Green Hill School has not sent the medical records". At this Point it has been three months since the initial request.

4.41 I had dismissed the issue with the thought of Green Hill School will eventually get to it. Later I figured out that I was wrong with my assumptions.

4.42 on March 17 2017 I had started kiting Clallam Bay Correction Center's medical very periodically to see if there was an update with my medical records. I also kited the Imu CuS Kenneth McKinney to see what the rules were for inmates to have C-Pap breathing Machines in the Imu. See exhibit 1 and 2 (A,B)

4.43 On March 17 2017 I sent a kite to medical asking to speak with someone about how to recieve my C-Pap breathing machine for my sleep apnea and why is it taking so long to get my medical files transfered from Green Hill School.

4.44 On March 20 2017 at 0820 Edie Krona, ARNP, MSN replied to me stating "records not yet recieved from Green Hill. There is no documentation of sleep apnea in your chart. We need the results of your sleep study". See exhibit 2 (A,B.)

4.45 Again on April 5 2017 at 3:30 Pm I kited medical and asked " has there been any progress in my sleep apnea docu�ments from Green Hill school, if not can someone please

| Continued | 4.45 Contact them again so I can get the information needed so I can start using a C-PaP". See exhibit 3 (A) |

4.46 On April 24 at 0840 nineteen days later I got a simple response from Loretta onstead stating " Still looking for these records".

4.47 On March 17 2017 I Kited medical stating " I need to speak with a medical Provider in regards of why there has been no effort to get my sleep study from Green Hill School, so I can obtain my C-PaP breathing machine. Please try to help me talk to someone in Person instead of half-way through kites. Please also send me a release of information so you can request the Paperwork from Green Hill School, I also need a copy of my medical records. The papers I include (exhibit 11 A, B, C) Please send back.

4.48 on April 18 2017 at 0800 Edie Kroha ARNP, MSN replied " Kite medical records to request your reports from Green Hill. Obtaining records is your responsibility not a Providers".

4.49  on April 19 2017 I kited medical records stating "I need a copy of my medical records from Green Hill School in regards of my sleep study and my C-PAP."

see exhibit 5,I

4.50  On April 20 2017 at 08.25 Loretta onslead RHIT responded "These records were ordered from JRA in April and June 2016. We are currently searching for them" (See exhibit 5, B).

4.51 on April 5 2017 I filed an initial grievance log i.D. # 17630175 explaining my medical issue and let it be known that I fear that if medical issue is not dealt with, I fear I will die in my sleep. This grievance was accepted to level 1 on April 6th 2017. See exhibit 6, A

4.52 On April 14 I recieved a typed response stating that "I have not addressed this issue while housed at CBCC or WCC". See exhibit 6, C

4.53 on April 17 2017 I had placed another grievance in see log i.D. # 17630175 that was accepted to level 2. See exhibit 8, A

4.54 on May 22 I recieved a typed response from the CBCC superintendent. See log i.D. # 17630175. See exhibit 8, B

1.54 On April 27 2017 I sent a kite to medical stating "I was wondering if there has been any progress regarding receiving my C-PAP records from Green Hill School also my sleep study reports. See exhibit 9, A

4.55 on May 1 2017 at 1420 Loretta
onstead replied " Records come in once a
week on wednesday. I will check again
at that time." see exhibit 9, B.

4.56 On April 27 I Kited medical
records requesting a copy of my medical file. see exhibit 10, I

4.57 On May 1 2017 at 1430 Loretta
On stead replied giving me the contact information
to the Public records office." see exhibit 10, B

4.57 on May 1 2017 I Kited medical
requesting a medical Chart review. see exhibit 11, A

4.58 on May 2 2017 at 0745 loretta
onstead replied saying I was scheduled for April May 8
12 2017. see exhibit 11, B

4.59  Since my transfer into the Department
of corrections I have had in my Possesion Confidential
medical records stating that I have a Significant
health diagnosis "Sleep apnea". I tried to have
Doc medical make a copy which they denied.

4.60 I feel as if Green Hill School and
the Department of Corrections are thwarting
my efforts to recieve Proper medical care just
to lead to my demise. I fear every night that
when I go to sleep, I may never wake up in the
morning.

4.61 I have clearly stated my medical issue on numerous occaisions to the proper persons and have all documentation of intentional disregard for a serious medical needs issue.

4.62 I really value my life greatly and have come to an understanding from the responses of the parties involved that they take the situation in a non serious matter. I am only nineteen years old and fear that I will not live much longer due to the actions of the staff employed by Green Hill School and the Department of Corrections.

4.63 On May 12 I have completed a medical chart review and requested three paper copies from my medical file. See exhibit 12, A, B, C

4.64 On May 15 2017 I recieved a letter via the inmate mail aknowledging my request for the three medical documents, along with a completed offender request to transfer funds I signed and returned the form the night of may 15 2017, See exhibit 12, B

4.65 On may 18 2017 there was supposed to be a response to my level 2 response log I.D. # 17636175, and placed a level 3 grievance appeal on monday may 22 2017. See exhibit 13, A

4.66 On may 30 2017 my level 2 appeal grievance was accepted to level 3.

4.67  On may 22 2017 I sent a kite to Doc medical requesting an update for the medical documents I requested and Payed for.

4.68  On June 28 2017 I recieved a written response to my level 3 grievance and this was the last Process in exhausting my remedies before filing into the court.

EXhibit 4

C. Additional Defendants:  # 02. CBCC Superintendent RONALD HAYNES,
# 03. CBCC-IMU Manager KENNETH E. MCKENNEY,  # 04. IMU Counselor,
AMBER Y. BATES,  # 05. CBCC-ARNP EDIE KROHA,  # 06. CBCC-RHIT,
LORETTA ONSTEAD,  # 07. CBCC Grievance Coordinator MICHAEL HOLTHE,
all sued in their individual, and official capacities.

IV.  STATEMENT OF CLAIM WITH FACTS IN SUPPORT

4.01  Plaintiff was approx. 12 years-old when he realized
that he had a medical-issue which has now been diagnosed as
"Severe-Sleep-Apnea." This medical-issue has been a constant
struggle to deal with throughout Plaintiff's young life.

4.02  Ever since Plaintiff can remember, he has had to
deal with this issue. Plaintiff remembers that he has always had
to deal with problems associated with his oxygen-intake while
he slept in the evening to early morning hours.

4.03  Plaintiff had not realized that this was a serious
medical condition/issue, until his Mother brought it to his
attention one day.

4.04  Plaintiff remembers his Mother waking him (while he
tried to sleep), and telling him that she would monitor his oxygen
intake, because he would stop breathing in his sleep.

4.05  This happened periodically, until Plaintiff (Martin),
finally asked his Mother why she would wake him up from his sleep?

4.06  Martin's Mother responded, and stated: "I noticed
that your loud-snoring would abruptly stop, and when I checked-
on-you, I discovered that you would stop breathing in your sleep."

4.07  Martin did not address the issue further, until he
was housed in "Echo-Glen's Children's Center."

4.08  While Martin was living in Echo-Glen's Children's-
Center (hereinafter EGCC), it became a constant issue of being
woken-up during the night, due to his shortness-of-breath, and
a complete loss-of-breath while sleeping.

4.09  While this was happening, it started to affect
Martin's daily performance with his concentration in education,
and in his ability to perform well in his daily life activities.

CIVIL RIGHTS COMPLAINT - Pg. 03.

4.10  Due to the medical problems getting worse, not better, Martin requested to meet with, and did consult with a medical provider, while at EGCC. Treatment options were discussed.

4.11  The EGCC Medical Provider came to the conclusion, that Martin should take part in a Sleep Study.

4.12  It was sometime in early 2012 that Martin went to Children's Hospital in Seattle, Washington, to complete the Sleep-Study.

4.13  After the sleep-study was performed, Martin was informed by the specialist that he had "not-quite" sleep-apnea yet, but that he should try surgery for a deviated septum, before the recommended use of a CPAP-Breathing-Machine.

4.14  It was at this time, that a date was set for the surgery for the deviated septum. Which would occur around the time of Martin's release from EGCC, in the summer of 2013.

4.15  A few Months after Martin's release from EGCC, Martin's Mother had accompanied him to Children's Hospital for the surgery to repair his deviated septum.

4.16  While there, the doctors explained to Martin that this operation was taking place because of excessive blockage of bone & tissue in his nasal passage. Also, that this was the first of many options to try and help Martin with the problems associated with his oxygen intake while sleeping.

4.17  Martin was only 15 years-old when this surgery was performed on him. The surgery was successful.

4.18  After the operation, Martin aknowledged that he had some difficulty breathing while trying to sleep, and at times he stop breathing completely.

4.19  It became apparent, that it wasn't just the blockage which had been inside his nose, it was also that he kept being awoken by the complete loss of oxygen while sleeping.

4.20  In August of 2014, Martin was incarcerated, and housed into Green-Hill-School.

4.21  While at Green-Hill-School (GHS), Martin's lack of oxygen (while sleeping) got worse, and it affected his sleep-cycle.

CIVIL RIGHTS COMPLAINT - Pg. 04.

4.22  Martin was not getting proper/enough sleep, and this affected his daily life activities, and his performance in school, along with his treatment being negatively impacted.

4.23  It was around November-December of 2014, that Martin met with, and consulted with a medical provider about the issues surrounding his lack of sleep, and lack of oxygen while sleeping.

4.24  At that time, it was recommended (once again), that Martin take-part-in another Sleep-Study.

4.25  On or about January of 2015, Martin went to do a Sleep-Study at _____, in Centralia, WA..

4.26  During this sleep-study, a variety of monitors were placed on Martin, for the first half of the evening.

4.27  During the second-half of the night, the nurse who was administering the study, woke Martin-up, and placed a CPAP-Breathing-Machine around his face, and then let Martin go back to sleep, to finish the study.

4.28  After the sleep-study, the nurse shared with Martin the results. It was explained to Martin, that he stops-breathing during his sleep, an average of 65 times every-hour. But, that number was significantly reduced by wearing a CPAP device.

4.29  Before Martin left the sleep-study, he was given a Cpap Breathing Machine, and the instructions on its use.

4.30  Martin then went back to Green-Hill-School (GHS), and was placed into a single-man cell, due to being the only cell (at that time) with a power outlet on the wall of the cell.

4.31  After the first evening of the machine's use, Martin noticed the improvement in his sleep. Martin had a higher energy level, and his performance in his daily activities improved.

4.32  On March 30, 2015, Martin was released from GHS. Martin took his Cpap machine home with him.

4.33  While at home, it was noticed by Martin's parents and by Martin, that when he decided to not use his machine, he would have difficulty sleeping, and not be himself the next day.

4.34  Sometime in late May of 2015, Martin was placed into the City of Kent's Regional Justice Center (RJC).

CIVIL RIGHTS COMPLAINT - Pg. 05.

4.35   Martin was 17 years-old at this time.

4.36   While Martin was at RJC, his Mother worked-hard to get it cleared, and to have permission to bring-in Martin's Cpap machine, so that he could use it while housed there.

4.37   RJC Medical Officials also approved this, as did RJC Sucurity Officials.

4.38   Martin obtained the machine until his release from RJC, due to his transfer to the adult prison system, the State-of Washington Department of Corrections (DOC).

4.39   When Martin was being transferred to DOC, he had released his Cpap Machine to his Mother, with the intention for her to bring the machine to Martin later on.

4.40   However, before Martin's transfer to the adult prison system, Martin was once again housed at Green-Hill-School (GHS).

4.41   While martin was housed at GHS, he made the proper inquires about his Mother bringing-in his Cpap machine. This was the start of a very long-road of struggles, in the attempts to have Martin's Cpap machine brought to him, so that he could get the proper sleep needed for a humane existence.

4.42   While at GHS, Martin was involved in the African-American-Group, and he was preparing for a performance on 2-17-16.

4.43   It was on this day that Martin's Mother was to bring his Cpap breathing machine to the event.

4.44   Martin's Mother had gotten permission to do this, around the beginning of February of 2016.

4.45   The head of security at GHS approved this, and the programs manager at Maple Living Unit also approved it. The name of the Unit Manager was Mr. Johnny Lewis, and the living Unit's supervisor was Mr. Henry Davis. Along with Mr. Roger _____.

4.46   On February 17, 2016, at approx. 12:oo pm, Martin's Mother arrived at GHS with the Cpap Machine. At which time, it was given to the living unit's supervisor Roger _____, so that it could be brought back to the living-unit, and be there before Martin arrived into the unit, after the above ceremony.

4.47   The days following February 17, 2016, Martin made several attempts to be assigned to a cell, that had a power-supply outlet, so that he could use the machine.
CIVIL RIGHTS COMPLAINT - Pg. 06.

4.48  Martin was told by the Maple Living Unit's Supervisor Roger _____, that he "cannot be placed in one of the two cells that had a power outlet, due to the fact that they were only for security level 4 person's, and you are Level 3." This was strictly enforced, even with the knowledge that Martin needed the power outlet to operate his machine, and it was a serious-medical-need. Martin was denied this access.

4.49  This was an ongoing struggle with the administration, of GHS. This struggle continued until March 13, 2016, in which an incident occured, that Martin allegedly was involved with, which caused Martin to be placed into GHS Segregation Unit.

4.50  While Martin was housed in Segregation, he made numerous requests to GHS Staff, to have them bring him his Cpap machine, so that he could properly sleep.

4.51  These requests went unanswered, and/or were ignored.

4.52  On March 28, 2016, GHS Security Officer Brian Lowe, and another security officer, arrived at Martin's cell-front, placed Martin in wrist-restraints, and had him escorted to the GHS Intake Bldg..

4.53  While on the way to the Intake Bldg. area, Martin turned toward security officer Lowe, and asked him "can someone retrieve my prayer-rug, Koran, and my address book from my cell, (in Segregation), along with my Cpap Machine from the Maple-Living-Unit?"

4.54  Once Martin arrived at the Intake Bldg., he noticed that his personal property items (above) were already there.

4.55  At this time, Martin (now an adult), was being transferred into Washington State DOC custody, and was in the process of being released from GHS to DOC custody.

4.56  While in the process of leaving GHS, Martin desired to bring with him, on the chain-bus, his property items (above).

4.57  The DOC transport officers would not let Martin bring his personal property with him.

4.58  The officers stated to Martin: "you cannot bring anything with you during this transfer."

CIVIL RIGHTS COMPLAINT - Pg. 07.

4.59   When Martin tried to explain his reasoning further, the officer (name ?), stated: "I told you, you cannot bring anything with you, now hurry-up and change-out."

4.60   Before Martin's release from GHS, he signed some medical documents, but he does not recall signing any documents related to his personal property items (above).

4.61   Martin believes that the process due to him, in regards to his personal property items were violated, because he was not allowed the opportunity to safeguard them, or to have these items sent to an outside source for safekeeping.

4.62   On March 28, 2016, Martin was transferred to, and housed at the Washington State Corrections Center (WCC). He was placed in a Segregation Cell. (I.M.U. E-103).

4.63   It was on this very same day, that Martin started to address the issues surrounding his need for the Cpap Machine.

PLAINTIFF'S   FIRST   NOTICE   TO   DOC   MEDICAL   STAFF

4.64   There should exist DOC Medical Records at WCC, that show, on or around March 28, 2016, Martin first began to complain/request a Cpap Machine, and the use of the same.

4.65   After these first complaints/requests were made, there was not an adequate response to these requests.

4.66   On April 17, 2016, Martin was released from WCC-Segregation, into the general prison population.

4.67   On April 21, 2016, Martin met with WCC Medical providers, and they then sent a formal request for Protected-Health-Care-Information documents to the Green-Hill-School, requesting all "Medical-Records" on Martin, to include the records on Martin's Sleep-Study. This was for the purpose of determining if in fact, Martin did have a need for the machine.

4.68   While this was going-on, Martin waited for the reply.

4.69   A couple Months later, Martin was transferred to Lewis County Jail, and the Superior Court of that County.

4.70   While "Out-to-Court," Martin awaited a response to the above formal medical request for his records from GHS.

CIVIL RIGHTS COMPLAINT - Pg. 08.

4.71   After Martin's business was completed in Lewis County Superior Court, he was returned to WCC.

4.72   Sometime after his return to WCC, on June 6, 2016, Martin signed an "Authorization For Disclosure of Health Info." to have it sent to GHS, so that Green Hill School could release Martin's Medical Records to WCC medical staff.

4.73   There was No Response from GHS. During Martin's entire time spent at WCC, there was No Response from GHS.

4.74   Eventually, Martin was transferred to the Airway-Heights-Corrections-Center (AHCC).

4.75   While housed at AHCC, Martin requested updates as to the status of his request for the medical records from GHS.

4.76   Martin was told, "there is no progress, GHS has not sent the medical records."

4.77   At this point, according to Martin's records, it had been (at least) 3 Months since Martin's initial request.

4.78   Martin had decided to be patient with his request, and he thought: "eventually they will get to it."

4.79   Later-on, Martin began to realize that he was incorrect in his prior assumption, that "eventually they will get to it." That's because Months had gone by, and still No Response from the Green-Hill-School.

4.80   On or about November-December of 2016, Martin was transferred from AHCC to CBCC. Martin arrived at the Clallam Bay-Corrections Center in the Month of December 2016.

4.81   On or about March 17, 2017, (while Martin was housed in Segregation / I.M.U.), at CBCC, he began sending Kites to the CBCC Medical Department (Health Care Unit, HCU), periodically requesting answers to his request for his medical records from Green-Hill-School.

4.82   Martin also sent Kites to the I.M.U. Manager, defendant KENNETH E. McKENNEY (McKenney), seeking information on the rules that govern the use of a Cpap Machine while in the Segregation Unit. See, Exhibits No. 1 & 2 (a),(b).

CIVIL RIGHTS COMPLAINT - Pg. 09.

4.83  On March 17, 2017, Martin sent a Kite to CBCC Medical Staff, requesting to speak to someone about how to receive his Cpap Breathing Machine, due to his diagnosed "Sleep-Apnea."

4.84  Martin also requested answers as to why it is taking soo long to receive any response from the GHS Medical Staff? See, Exhibits No. 1 & 2.

4.85  On March 20, 2017, defendant EDIE KROHA (Kroha), (the ARNP, MSN), replied, and stated to Martin: "records not yet received from Green Hill School, there is no documentation of Sleep Apnea in your chart." "We need the results of your sleep-study." See, Exhibit No. 2(a),(b).

4.86  Again, on April 05, 2017, at 3:30pm, Martin Kited CBCC Medical Staff, and asked: "has there been any progress in my Sleep-Apnea documents from GHS?" "If not, can someone please contact them again, so I can get the information needed." "So, I can start using a Cpap." See, Exhibit No. 3(a).

4.87  On April 24, 2017, (Nineteen days later), Martin got a response from defendant LORETTA ONSTEAD (Onstead), stating: "Still looking for these records." See, Exhibit No.          .

4.88  On March 17, 2017, Martin again Kited CBCC Medcial-Staff stating: "I need to speak with a medical provider in regards to why there has been no effort to get my sleep-study from Green-Hill-School, so I can obtain my Cpap breathing machine." "Please try to help me talk to someone in person, instead of half-way through Kites." "Please also send me a release of information, so you can request the paperwork from Green-Hill-School." "I also need a copy of my medical records." "The papers I include." See, Exhibits 11(a),(b),(c). Please send back.

4.89  On April 18, 2017, defendant Kroha replied, and said: "Kite medical records to request your reports from Green Hill." "Obtaining records is your responsibility, not a providers." See, Exhibit No.          .

4.90  On April 19, 2017, Martin Kited CBCC medical staff, (the medical records office), and stated: " I need a copy of my

CIVIL RIGHTS COMPLAINT - Pg. 10.

medical records from Green-Hill-School, in regards to my Cpap."
See, Exhibit No. 5(a).

4.91   On April 20, 2017, defendant Onstead (RHIT), replied
and stated: "These records were ordered from JRA in April, and
June of 2016." "We are currently searching for them." See, Exhibit
5(b). This answer led Martin to believe that his records had been
lost, or misplaced, due to mismanagement, and negligence in the
CBCC Medical Department.

4.92   On April 27, 2017, Martin sent another Kite to the
CBCC Medical Department, stating: "I was wondering if there has
been any progress regarding receiving my Cpap records from the
Green-Hill-School?" "Also my Sleep-Study reports?" See, Exhibit
No. 9(a).

4.93   On May 01, 2017, defendant Onstead replied: "Records
come in once a week, on Wednesday." "I will check again, at that
time." See, Exhibit No. 9(b).

4.94   It was becoming apparent to Martin that CBCC Medical
Officials were not taking this situation seriously, or giving it
the proper attention it deserved. All the while, Martin was left
to suffer without his sleep-aids, and he was at risk of dying in
his sleep at any moment, due to No Cpap machine.

4.95   The evidence will show that Martin has been informing
defendants who work in DOC Medical Offices', at numerous Prison-
Facilities, about his concerns, and requests related to his need
for this Cpap Machine, and yet a Year later, there is No medical
treatment provided for this serious medical need.

4.96   Since Martin's transfer into the custody of the
Washington State Department of Corrections (DOC), he has had in
his possession a document that states he has been diagnosed with
"Sleep-Apnea," and yet defendants have done little to nothing to
assist Martin with this serious medical need. A Year later, and
Martin is still dealing with the lack of a Cpap Machine.

4.97   This is clearly behavior that shows deliberate
indifference to Martin's serious medical needs.

CIVIL RIGHTS COMPLAINT - Pg. 11.

4.98   On May 01, 2017, Martin Kited CBCC Medical Staff, requesting a Medical-Chart-Review. See, Exhibit No. 11(a).

4.99   On May 02, 2017, defendant Onstead replied, and stated that Martin was scheduled for his review on May 12, 2017. See, Exhibit No. 11(b).

4.100   On May 12, 2017, Martin completed his medical-chart-review, and noticed in his medical files, that there were some records that he did not have before. Martin tagged those records, and requested copies of the same.

4.101   On May 15, 2017, Martin received confirmation, in regards to the requested records, and Martin made arrangements to purchase these records. See, Exhibits 12(a),(b),and (c).

4.102   The evidence presented shows clearly that defendants McKenney, Kroha, and Onstead were placed on notice regarding the need for Martin to have, and use a Cpap machine. But, no machine was provided. There is no excuse for this behavior.

4.103   These defendants (above) have placed Martin a risk of suffering great bodily harm, or even death.

DEFENDANTS HAYNES, BATES, AND HOLTHE

CIVIL RIGHTS COMPLAINT - Pg. 12.

V. All Parties Involved

5.01- All Parties involved in this case are:

The Plantiff is Devin Anthony Martin
Doc # 384-305
Clallam Bay Corrections Center (hereinafter CBCC)
1830 Eagle Crest Way
Clallam Bay WA 98326-9723

5.02- Washington State Department of Corrections, Secretary Steven Sinclair

5.03- CBCC Superintendent, Ronald Haynes

5.04- Imu unit manager Kenneth McKinney

5.05- Counselor Amber y. Bates

5.06- Edie Krotla ARNP

5.07- Loretta onstead R.H.I.T.

5.08- Grievance Coordinator Michael Holthe

VI. Additional Parties Involved

6.01 Plantiff Devin Anthony Martin reserves the right to add Parties to this case as they become known throughout the duration of this civil action.

## VII. All Defendents have acted under color of State law

7.01  All defendents have acted under color of state law, during all times mentioned herein.

## VIII.  Questions of Law and Facts

There are questions of law and facts that need to be answered. They are:

8.01  Whether or not all defendents have violated Martin's Constitutional Rights.

## IX. Causes of action

Count one:

Defendents have Violated The Plantiff's
Eight Amendment Rights by Exhibiting
Deliberate Indifference To His
Serious medical Needs, And Defendents
Have Not Responded Reasonably To
Plantiff's Complaints.

Count two:

Defendents Have Violated The
Plantiffs Eighth Amendment Rights
by Denying or Delaying appropriate
Medical Treatment In The Refusal To
Supply Plantiff with a C-PaP Machine.

Count three:

Defendents Have Violated The Plantiff's
Eighth Amendment Rights Under The
Americans With Disabilities Act (ADA)

Count four:

Defendants Have Violated The
Plantiff's Eighth Amendment Rights
by Disregarding Plantiff's Serious
Medical Neess and Leaving Plantiff
at Risk Of Death.

## X. Relief Requested

Plantiff Requests The following Relief:

(A) Court Ordered injunction directing defendents to immediately Provide Martin with a C-Pap Machine.

(B) Awarded damages Compensatory in the amount of $ 2,500,000.00

Punitive in the amount of $ 5,500,000.00

Special damages in the amount of $ 5,500,000.00

(C) Award Costs involved or expended by Plantiff in this Case

# Conclusion and Verification

For the Foregoing Reasons, With The Facts in support, Plantiff Respectfully Requests that This Court Grant Plantiff The Relief Requested in His Complaint, and Schedule this Case for a Jury Trial.

Pursuant to The Title 28 U.S.C. § 1746, Plantiff Declares / Certifies under the Penalty of Perjury, under The Laws of The United States of America that the Foregoing is True and Correct.

CC: Plantiff
    Court Clerk
    Defendents

DEVIN ANTHONY MARTIN
Pro se Plantiff
Doc # 384-305

# Certificate Of Service

The undersigned Party Declares that on the below date to be served, via the CM/ECF system, or Through the U.S. Postal Service a copy of The Foregoing "initial Civil Rights Complaint" to be delivered To:

Clerk, U.S. District Court
1717 Pacific Ave, Room 3100
Tacoma WA 98402

The undersigned Party declares under the Penalty of Perjury under The Laws of The United States of America that the Foregoing is true and Correct.

Dated this 10 day of
July , 2017

DEVIN ANTHONY MARTIN
Pro se Plaintiff
Doc # 384·305

CC: Plaintiff
Court Clerk
Defendants